IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br>378 N. Main Avenue<br>Tucson, AZ 85701,<br><br>*Plaintiff*,<br><br>v.<br><br>DEBRA HAALAND, *in her official capacity as Secretary of the U.S. Department of the Interior*,<br>1849 C Street NW<br>Washington, DC 20240,<br><br>and<br><br>U.S. FISH AND WILDLIFE SERVICE,<br>1849 C Street NW<br>Washington, DC 20240,<br><br>*Defendants*. | Case No. 24-230 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1. Plaintiff Center for Biological Diversity ("the Center") challenges the Secretary of the Interior Debra Haaland and the U.S. Fish and Wildlife Service's (collectively "the Service" or "Defendants") failure to issue a timely 12-month finding on the Center's petition to list the Bornean earless monitor lizard (*Lanthanotus borneensis*), referred to herein as the "earless lizard," under the Endangered Species Act ("ESA"). 16 U.S.C. §§ 1531–1544.

2. The earless lizard is gravely imperiled. Called the "Holy Grail" by reptile keepers, earless lizards are in demand in the international pet trade due to their unusual appearance, often described as dragon-like. The species has a limited range, inhabiting only the island of Borneo in

1

Southeast Asia, and has only five known subpopulations that scientists believe to be small and declining. The species is particularly susceptible to threats, including exploitation for the international pet trade and habitat loss.

3. The earless lizard is advertised for sale within the United States, and the U.S. pet trade is likely a major driver of the international market for the species.

4. Recognizing the serious threats earless lizards face, on November 2, 2022, the Center petitioned Defendants to list the species as endangered under the ESA. If listed as endangered, the ESA would ban the import, export, and sale of earless lizards in the United States, reining in the pet trade and giving this imperiled lizard a chance for recovery.

5. To ensure imperiled species' listings occur in a timely manner, the ESA sets strict deadlines for agency listing decisions. The ESA first requires the Secretary of the Interior, through the Service, to determine if listing "may be warranted" within 90 days of receiving a petition. 16 U.S.C. § 1533(b)(3)(A). If the Service makes such a finding, the ESA requires the Service to determine whether listing "is warranted" within 12 months of the petition's receipt, and if so, promptly propose and then later finalize the listing. *Id.* § 1533(b)(3)(B), (b)(6).

6. The Service found that listing the earless lizard "may be warranted" on August 17, 2023. 88 Fed. Reg. 55,991 (Aug. 17, 2023).

7. More than 14 months have passed since the Center submitted its earless lizard ESA listing petition.

8. Defendants have not issued the required 12-month finding on the Center's petition as of the date of this Complaint. As such, the Service is violating the ESA. Through this Complaint, Plaintiff seeks a declaratory judgment and injunctive relief to compel the Service to

issue a 12-month finding on the Center's petition by a date certain, as well as fees and costs associated with this litigation.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 16 U.S.C. § 1540(c) and (g)(1)(C) (actions arising under the ESA) and 28 U.S.C. § 1331 (actions arising under the laws of the United States). This action arises under the ESA, 16 U.S.C. §§ 1531–1544, and the requested relief is authorized under 16 U.S.C. § 1540(g) (ESA), 28 U.S.C. § 2201 (declaratory relief), 28 U.S.C. § 2202 (injunctive relief), and the Court's equitable powers.

10. The ESA provides a waiver of the federal government's sovereign immunity. 16 U.S.C. § 1540(g).

11. The Center sent a formal notice to Defendants of its intent to file suit under the ESA on November 15, 2023, more than 60 days prior to filing this Complaint, consistent with the ESA's statutory requirement. 16 U.S.C. § 1540(g)(2).

12. Defendant Debra Haaland, Secretary of the Interior, received a copy of the Center's notice letter via first-class, certified mail on November 24, 2023. Defendant U.S. Fish and Wildlife Service ("the Service") received a copy of the Center's notice letter, directed to Ms. Martha Williams, Director of the Service, via first-class, certified mail on November 24, 2023.

13. In a letter signed December 22, 2023, the Service indicated it "will complete [its 12-month status] review as soon as possible," but the agency did not provide a date by which it would issue a 12-month finding.

14. Defendants have not remedied their continuing ESA violation as of the date of this Complaint. Therefore, an actual controversy exists between the Parties under 28 U.S.C. § 2201.

3

15. Venue in this Court is proper under 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e)(1) because Defendants reside and are headquartered in this judicial district and a substantial part of the events, omissions, and violations giving rise to the claim occurred in this district.

**PARTIES**

**A.      Plaintiff**

16. Plaintiff Center for Biological Diversity ("the Center") is a 501(c)(3) nonprofit corporation incorporated in the State of California. The Center maintains offices across the country, including in Washington, DC; California; Arizona; and Oregon; and in Baja California Sur, Mexico. The Center works through science and environmental law to advocate for the protection of endangered, threatened, and rare species and their habitats. The Center's International Program works to protect global biodiversity by using U.S. and international law to protect imperiled species wherever they are found around the globe. In pursuit of its mission, the Center has been actively involved in seeking and securing protections for species abroad, including earless lizards and other lizards, fish, frogs, and turtles in the pet trade. The Center has more than 79,000 active members and approximately 1.7 million online activists living both in the United States and other nations.

17. The Center and its members derive professional, scientific, educational, recreational, conservation, aesthetic, and other benefits from earless lizards in the wild. The Center has members who have concrete plans to visit earless lizard habitat to view the species. Plaintiff also has members who regularly visit wildlife markets to attempt to observe and document wildlife offered for sale, including earless lizards, other lizards, and other animals in the pet trade.

18. For example, Dr. Christopher Shepherd is a Center member and expert on illegal and unsustainable wildlife trade. Dr. Shepherd lived and worked in Southeast Asia for over two decades, investigating and researching wildlife trade issues. During these years, he enjoyed spending time in nature and observing wildlife including looking for reptiles. Dr. Shepherd now resides in Canada, but he regularly visits Southeast Asia to see family and for work, including to visit wildlife markets to assess and document species offered for sale. He returned from his most recent trip to Malaysia in January 2024, and Dr. Shepherd has visited the island of Borneo more than ten times in the past.

19. As an avid wildlife watcher, Dr. Shepherd has seen at least 2,500 species of animals, including more than 100 species of reptiles, and has looked for and seen six monitor lizard species, including Bengal monitors, clouded monitors, and water monitors in Asia and Nile monitors in Africa. He attempts to view wildlife, particularly threatened wildlife, whenever he is able during foreign travel, including during his regular trips to Southeast Asia. Dr. Shepherd has concrete plans to visit the habitat of the earless lizard on the Malaysian side of Borneo in August 2024, following a reptile conference to be held in Kuching, Sarawak. He intends to attempt to see the earless lizard in its native habitat, along with other Bornean wildlife.

20. Defendants' violations have directly, adversely, and irreparably harmed the Center and its members' interests in the earless lizard. This harm is ongoing and will continue unless and until this Court provides the relief prayed for in this Complaint. The Center's members are less likely to observe earless lizards in the wild as the species continues to decline without ESA protections.

21. The relief sought in this Complaint would redress Plaintiff's members' injuries. ESA listing would provide earless lizards with important protections and benefits. The ESA

generally bans the import, export, and sale of endangered species in interstate and foreign commerce, 16 U.S.C. § 1538(a), and requires the Service to issue regulations deemed "necessary and advisable" for the conservation of threatened species, *id.* § 1533(d). The ESA also provides for "international cooperation" in the conservation of listed foreign species. *Id*. § 1537. ESA listing increases awareness of listed species and their threats; stimulates research efforts to address conservation needs; and increases funding for conservation of species in their range countries, including for habitat conservation. Under the ESA, the Service provides financial assistance for programs to conserve listed species in foreign countries, encourages conservation programs for such species, and offers other related assistance, such as personnel and training.

22. Therefore, the Center and its members are injured by Defendants' failure to make a timely 12-month finding on the Center's petition to list the earless lizard under the ESA. Defendants' protracted failure prevents the application of the ESA's substantive protections that are vitally important to the earless lizard's survival and eventual recovery. These are actual, concrete injuries presently suffered by the Center and its members. These injuries are directly caused by Defendants' acts and omissions, and they will continue to occur unless the Court grants relief. The Center and its members have no other adequate remedy at law.

**B.     Defendants**

23. Defendant Debra Haaland is the Secretary of the U.S. Department of the Interior. In this capacity, Secretary Haaland directs all business of the Department of the Interior. Pursuant to the ESA, Secretary Haaland is responsible for determining whether species are endangered or threatened and for promulgating regulations to list and protect those species. In her official capacity, Secretary Haaland is responsible for the violations alleged in this Complaint.

24. Defendant U.S. Fish and Wildlife Service ("the Service") is an agency within the Department of the Interior. The Secretary of the Interior has delegated to the Service the authority to administer the ESA for many species of wildlife, 50 C.F.R. § 402.01(b), including the responsibility of complying with the ESA's mandatory listing deadlines. This authority encompasses proposed and final listing decisions for earless lizards.

## FACTUAL AND STATUTORY BACKGROUND

### A.   Earless Lizards

25. The earless lizard (*Lanthanotus borneensis*) is a semiaquatic lizard related to monitor lizards. The earless lizard is found only on the southeast Asian island of Borneo within lowland rainforests.

26. Measuring up to approximately one to one and a half feet long, the earless lizard lacks an external ear opening, giving it its name. Brown in coloration with a rounded snout, the animal's unusual appearance is often described as dragon-like.



*Chien C. Lee, Wild Borneo Photography*

27. Earless lizards are very rare. Only five subpopulations of earless lizards have been identified, and the known subpopulations likely occupy a total area of only 20–square miles.

28. Earless lizards are threatened by collection for the international pet trade and habitat loss in Borneo. The earless lizard's likely small population size and limited range make the species particularly susceptible to these threats.

29. Earless lizards are in demand as pets, including in the United States. Called the "Holy Grail" by reptile keepers, earless lizards have been actively traded in the United States for several years. For example, published reports document a minimum of 22 earless lizards offered for sale in the United States between 2014 and 2015. Separate reports document three online advertisements for six earless lizards in the United States in 2015 with prices ranging from USD $6,500–7,000 and another online advertisement in the United States for two earless lizards in 2016. Two earless lizards were advertised for sale online in the United States in January 2024.

30. The number of earless lizards taken from the wild is likely much higher than the number recorded in trade due to mortality along the trade chain, limited data on trade within national borders, and the often-illicit nature of the trade.

31. Collection from the wild for trade has contributed to the earless lizard's decline.

32. Upon information and belief, there are no commercial breeding facilities for earless lizards to supply the pet industry. Therefore, earless lizards available in commercial trade were likely taken from the wild.

33. Earless lizards were included in Appendix II of the Convention on International Trade in Endangered Species ("CITES") in 2017, and a zero-export quota was adopted for wild specimens of earless lizards for commercial purposes under CITES. As a result, CITES bans international, commercial trade of earless lizards collected from wild populations.

34. Yet earless lizards continue to be offered for sale in the United States as of the date of this Complaint.

35. Moreover, illegal wildlife trade in Indonesia, one of the earless lizard's range countries, is rampant. As one paper states, "[m]ost wildlife trade in Indonesia is illegal, yet enforcement is almost non-existent."

36. The highly valuable earless lizard is likely smuggled from its range to the United States.

37. In addition to being threatened by the international pet trade, earless lizards are also threatened by habitat loss. Over 30 percent of forests in Borneo were lost from 1973–2010 because of logging, fires, and land conversion to plantations. Scientists have concluded that "the Borneo Earless Monitor [lizard] has undoubtedly suffered declines and likely local extinctions as a result of forest clearance."

38. The International Union for Conservation of Nature ("IUCN") assessed the species as Endangered in 2021, concluding that earless lizards are facing a very high risk of extinction in the wild. The assessment indicates that the remaining wild population likely declined more than 30 percent over the last three generations and continues to decline. Of the five known, extant subpopulations, one is in an area where logging has begun and at least one other has been targeted by traders for the pet trade.

39. ESA protections are urgently needed to protect the earless lizard from further decline.

    **B.**    **Role of the Pet Trade in Contributing to Reptile Extinctions**

40. Globally, reptiles are understudied; likely 30 percent of reptile species have not yet been assessed by the International Union for Conservation of Nature.

41. Many reptiles are significantly impacted by the pet trade. Populations of reptiles around the globe have been extirpated due to collection for trade. Numerous reptile species have suffered population declines due to overcollection for the pet trade.

42. Rare species and species that are newly identified tend to be in demand such that the pet trade can rapidly deplete such species, at times even before protections can be enacted.

C. **The Endangered Species Act**

43. Recognizing that endangered and threatened species are of "esthetic, ecological, educational, historical, recreational, and scientific value to the Nation and its people," Congress enacted the ESA in 1973 "to provide a program for the conservation of" these species. 16 U.S.C. § 1531(a)(3), (b).

44. To this end, Section 4 of the ESA requires the Secretary of the Interior to determine whether any species is "endangered" or "threatened," and if so, list the species under the ESA. 16 U.S.C. § 1533(a), (c). The Secretary has delegated her administration of the ESA to the Service. 50 C.F.R. § 402.01(b).

45. An endangered species is any species that "is in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6). A threatened species is any species that "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).

46. The Service must list a species if it is endangered or threatened due to "(A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence." 16 U.S.C. § 1533(a)(1). The Service must

make listing determinations "solely on the basis of the best scientific and commercial data available . . . after conducting a review of the status of the species." *Id.* § 1533(b)(1)(A); 50 C.F.R. § 424.11(b).

47. Once a species is listed under the ESA, prescribed protections apply.

48. Section 7(a) of the ESA requires that each federal agency "shall . . . utilize [its] authorities . . . [to] carry[ ] out programs for the conservation" of listed threatened and endangered species. 16 U.S.C. § 1536(a)(1). The same section also requires that each federal agency "shall" consult with the relevant expert agency (for earless lizards, the Service) to "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence" of a listed species. *Id.* § 1536(a)(2).

49. Section 9 of the ESA generally prohibits the "take" of any endangered species within the United States without authorization from the Service. 16 U.S.C. §§ 1538(a)(1)(B), 1539. Section 9 also prohibits the import, export, transport, possession, and sale of any endangered species in interstate or foreign commerce. *Id.* § 1538(a)(1)(A), (D), (E), (F).

50. For threatened species, Section 4(d) specifies that the Service "shall issue such regulations as [it] deems necessary and advisable to provide for the conservation of such species" and may extend any of the prohibitions in Section 9 to the species. 16 U.S.C. § 1533(d).

51. The ESA also authorizes the Service to provide financial and other assistance for programs that conserve foreign ESA-listed species. 16 U.S.C. § 1537(a), (c).

52. The ESA further authorizes and directs the Service through the U.S. Secretary of State to encourage foreign nations to conserve listed species and enter the United States into treaties and other agreements to provide for such conservation. *Id.* § 1537(b)(1), (2).

53. Shipments of ESA-listed species coming through U.S. ports are more heavily scrutinized by border officials than shipments of non-ESA listed species.

54. To ensure the timely protection of species that are at risk of extinction, Congress established a detailed, time-bound process whereby citizens may petition the Service to list a species as endangered or threatened and the Service must respond.

55. Specifically, "[t]o the maximum extent practicable, within 90 days" of receiving a listing petition, the Service must make an initial "finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A). The finding is referred to as a "90-day finding."

56. If the Service determines that listing may be warranted, it must conduct a full scientific review of the species' status. 16 U.S.C. § 1533(b)(3)(A). Then, within 12 months of receiving the petition, the Service must make one of three findings: (1) listing is "warranted;" (2) listing is "not warranted;" or (3) listing is "warranted but . . . precluded" by other pending listing proposals, provided certain requirements are met. *Id.* § 1533(b)(3)(B). The finding is referred to as a "12-month finding."

57. If the Service's 12-month finding concludes that listing is warranted and not precluded, the agency must "promptly publish" a proposed regulation to list the species as endangered or threatened in the Federal Register for public comment. 16 U.S.C. § 1533(b)(3)(B)(ii). Within one year of publication of the proposed regulation, the Service must render its final determination on the proposal. *Id.* § 1533(b)(6)(A). At such time, the Service must either list the species, withdraw the proposed listing rule, or, if there is substantial disagreement about scientific data, delay a final determination for up to six months to solicit additional scientific information. *Id.* § 1533(b)(6)(A)(i), (B)(i).

58. The ESA authorizes the Service to emergency list a species for 240 days, bypassing the standard ESA and Administrative Procedure Act rulemaking requirements, when there is an "emergency posing a significant risk to the well-being of any species of fish or wildlife or plants." 16 U.S.C. § 1533(b)(7). Following public notice and comment, the species can then be listed on a non-emergency basis. *Id*.

59. The ESA's strict protections do not safeguard species at risk of extinction until the Service lists the species as endangered or threatened. Accordingly, it is critical that the Service strictly comply with the Act's listing procedures and deadlines to ensure species are listed in a timely manner.

60. The Service has issued a series of workplans, setting non-binding timelines in which the agency intends to take listing actions for foreign species by fiscal year, including publishing 12-month findings and proposed listing rules.

61. The Service issued a foreign species workplan in 2020. In fall 2021, the Service issued a revised foreign species workplan that, among other things, pushed back the Service's non-binding timelines for completing listing actions for several species. The Service issued its current workplan in June 2023 in which it further delayed its non-binding timelines for completing listing actions.

D. **Plaintiff's Petition and Defendants' Failure to Meet ESA Deadlines**

62. Recognizing the perils earless lizards face due to overutilization, international trade, habitat destruction, and inadequate regulatory mechanisms, the Center submitted a petition on November 2, 2022, to list the earless lizard under the ESA.

63. The petition included a request that the Service list the earless lizard on an emergency basis due to its small population size, its rarity, and the demand for this unique species as pets, especially in the United States.

64. The Service issued a positive 90-day finding on Plaintiff's petition to list the earless lizard on August 17, 2023, finding the species' listing "may be warranted." 88 Fed. Reg. 55,991, 55,994 (Aug. 17, 2023).

65. The Service did not emergency list the earless lizard.

66. More than 14 months have passed since the Center filed its petition to list the earless lizard. The Service has not issued the required 12-month finding on the petition to date.

## CLAIM FOR RELIEF

### Violation of the Endangered Species Act

67. Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though fully set forth below.

68. Defendants' protracted and ongoing failure to make the statutorily required, timely 12-month finding on the Center's petition to list the earless lizard as endangered violates the Endangered Species Act. 16 U.S.C. § 1533(b)(3)(B).

## REQUEST FOR RELIEF

The Center respectfully requests this Court:

A. Declare that Defendants have violated and continue to violate the ESA by failing to issue a 12-month finding on whether listing the imperiled earless lizard under the ESA is warranted, 16 U.S.C. § 1533(b)(3)(B);

B. Order Defendants to issue, by a date certain, a finding as to whether listing the earless lizard under the ESA is warranted, 16 U.S.C. § 1533(b)(3)(B);

    C.    Award the Center its attorneys' fees and costs in this action as provided by the ESA, 16 U.S.C. § 1540(g)(4);

    D.    Retain continuing jurisdiction to review Defendants' compliance with all judgments and orders herein; and

    E.    Provide such other and further relief this Court deems just and proper.

Dated: January 25, 2024              Respectfully submitted,

                                          */s/ Tanya Sanerib*
                                          Tanya Sanerib
                                            DC Bar No. 473506
                                            Center for Biological Diversity
                                            1037 NE 65th Street, #128
                                            Seattle, WA 98115-6655
                                            (206) 379-7363
                                            tsanerib@biologicaldiversity.org

                                            Sarah Uhlemann
                                            DC Bar No. 501328
                                            Center for Biological Diversity
                                            1037 NE 65th Street, #128
                                            Seattle, WA 98115-6655
                                            (206) 327-2344
                                            suhlemann@biologicaldiversity.org

                                            *Attorneys for Plaintiff Center for Biological Diversity*